IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

JUDITH REGAN, et al.,

        Plaintiffs,

vs.

COUNTY OF SALT LAKE, et. al.,

        Defendants.

Civil No.  2:80-CV-131 BSJ

**MEMORANDUM OPINION**
**& ORDER**

<table>
<tr><td><strong>FILED</strong><br>CLERK, U.S. DISTRICT COURT<br>December 11, 2006 (10:59am)<br>DISTRICT OF UTAH</td></tr>
</table>

* * * * * * * * *

This matter comes before the court on Defendants' Second Motion to Terminate Prospective Relief (the "Second Motion to Terminate").  In the Second Motion to Terminate, Defendants move the court pursuant to 18 U.S.C.S. § 3626(b)(1)(A)(iii) of the Prison Litigation Reform Act ("PLRA") to terminate the prospective relief set forth in the Consent Decree, which was stipulated to by the parties and entered by the court in this case in the summer of 1982.

On March 15, 2005, the court held a hearing on the Second Motion to Terminate.  At the hearing, Plaintiffs were represented by Robert M. Anderson of Van Cott Bagley Cornwall & McCarthy and Margaret D. Plane of the American Civil Liberties Union Foundation, Inc., and Defendants were represented by Patrick Holden of the Salt Lake County District Attorney's Office.  After hearing the parties' respective arguments, the court took the matter under advisement.  The court has carefully considered the parties' arguments and the law and facts relevant to the Second Motion to Terminate and now, being fully advised, enters the following Memorandum Opinion and Order granting Defendants' Second Motion to Terminate.

## I.  BACKGROUND

On March 6, 1980, Judith Regan and Jane Doe, on behalf of themselves and all others similarly situated, filed the Complaint in this case.[1]  The Complaint alleged that Salt Lake County and certain of its employees and elected officials were engaging in a policy and practice of subjecting certain female detainees to strip searches and, in some cases, vaginal searches where there was not probable cause to believe that the detainees were concealing a weapon, a controlled substance, or evidence relating to a suspected crime.[2]  The Complaint alleged that this policy and practice violated the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution.[3]

After the case had proceeded for over two years, counsel for the parties, along with Pete Hayward, the then-Salt Lake County Sheriff, stipulated to the entry of the Consent Decree on June 30, 1982, and the court signed the Consent Decree on July 13, 1982.[4]  The Consent Decree imposed procedural and substantive requirements on Salt Lake County and its officers, agents, and employees with respect to the conduct of strip searches.[5]

On November 3, 2004, Defendants filed a motion to terminate the Consent Decree (the "First Motion to Terminate"), asking the court to terminate the prospective relief previously

---

[1](Complaint (dkt. no. 1).)

[2](*Id.*)

[3](*Id.*)

[4](Consent Decree (dkt. no. 96).)

[5](*Id.*)

granted by way of the Consent Decree.[6]  Defendants argued that the Consent Decree should be terminated because it did not contain the requisite findings under the PLRA that the relief in the Consent Decree is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right and because there was no indication in the record that the prospective relief in the Consent Decree remained necessary to correct a current and ongoing violation of detainees' federal rights.[7]

Plaintiffs opposed the First Motion to Terminate and concurrently moved the court to appoint an expert under Rule 706 of the Federal Rules of Evidence to review Salt Lake County's detainee policy and to observe and evaluate the actual search procedures in practice at the Salt Lake County Jail.[8]  Plaintiffs argued that it was unclear precisely what Salt Lake County's then-current search policy was and that the court should not rule on Defendants' motion without giving Plaintiffs the opportunity to present evidence that such policy, whatever it was, was resulting in current and ongoing violations of federal law.[9]  Plaintiffs argued that a court-appointed expert was necessary in order for Plaintiffs to "supplement the record with current information."[10]

On December 20, 2004, after hearing the parties' respective arguments on the First Motion to Terminate and on Plaintiff's motion to appoint an expert, the court deferred decision

---

[6](Defendants' First Mot. to Term. (dkt. no. 120).)

[7](*Id.*; Defendants' Memo. in Supp. of First Mot. to Term. (dkt. no. 121).)

[8](Plaintiffs' Mot. for Appt. of Expert (dkt. no. 124); Plaintiffs' Memo. in Opp. to First Mot. to Term. (dkt. no. 125).)

[9](Plaintiffs' Memo. in Opp. to First Mot. to Term. (dkt. no. 125) at 2-3.)

[10](*Id.* at 3.)

on Plaintiffs' motion and dismissed Defendants' First Motion to Terminate.[11]  With respect to its

dismissal of the First Motion to Terminate, the court indicated that the relief sought was

premature, but allowed Defendants to amend their motion by no later than January 12, 2005.[12]

The court also requested counsel for Defendants to analyze the current detainee strip search

policy of the Salt Lake County Sheriff's Office in light of the requirements of the Consent Decree

and to show the court that the current policy is constitutional.[13]

On January 12, 2005, Defendants filed their Second Motion to Terminate.[14]  In their

supporting memorandum, Defendants attached and summarized the sections of the Salt Lake

County Jails Policy Manual that related to the conduct of detainee searches and argued that their

current policies met constitutional standards.[15]

In their opposition, Plaintiffs argued that although certain sections of the Salt Lake

County Jails Policy Manual had been revised since Defendants had filed their First Motion to

Terminate, sections of the policy were "still ambiguous and/or highly invasive and suggest a high

likelihood of current and ongoing violations of a Federal right at the Jail."[16]  Plaintiffs further

claimed that the existence of two lawsuits alleging violations of prisoners' rights during strip

---

[11](Order Re First Mot. to Term. (dkt. no. 130); Dec. 20, 2004 Minute Entry (dkt. no. 128).)

[12](*Id.*)

[13](*Id.*; Defendants' Memo. in Supp. of Second Mot. to Term. (dkt. no. 132) at ii ¶ 2.)

[14](Defendants' Second Mot. to Term. (dkt. no. 131).)

[15](Defendants' Memo. in Supp. of Second Mot. to Term. (dkt. no. 132).)

[16](Plaintiffs' Memo. in Opp. to Second Mot. to Term (dkt. no. 134) at 3, 5.)

4

searches, which had been settled by Salt Lake County after the Consent Decree was entered, "suggests that continued violations have occurred since the entry of the consent decree."[17] Plaintiffs again argued that the court should appoint an expert pursuant to Rule 706 of the Federal Rules of Evidence and claimed that "[o]nly by having a qualified expert review all procedures and policies and report to the Court will it be possible to determine if the current procedures and the [Salt Lake County Jails Policy Manual] comport with constitutional requirements."[18]

On March 15, 2005, the court heard the parties' oral arguments on the Second Motion to Terminate and the court took the matter under advisement.[19]  On October 18, 2005, the court issued its Order to Supplement the Record, requesting Defendants to "identify with specificity, on a paragraph-by-paragraph basis, that portion of the manual which incorporates – at least in substance – the decree . . . ."[20]  On October 28, 2005, Defendants filed their Supplemental Memorandum, comparing in detail the provisions of the Consent Decree with the current provisions of the Salt Lake County Jails Policy Manual.[21]

## ANALYSIS

In this case, the Consent Decree was stipulated to by the parties and signed by the court respectively in June and July of 1982, nearly fourteen years before the PLRA was enacted on

---

[17](*Id.* at 4.)

[18](*Id.* at 3.)

[19](Mar. 15, 2005 Minute Entry (dkt. no. 136).)

[20](Order to Supp. Record (dkt. no. 138).)

[21](Defendants' Supp. Memo. (dkt. no. 139).)

April 26, 1996.  And accordingly, at the time the Consent Decree was entered, the court did not make specific findings that the prospective relief contained in the Consent Decree is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right[,]" as is now required by Section 3626(b)(2) of the PLRA.  Because these findings were not made, the PLRA requires this court to terminate the Consent Decree, as requested by Defendants in the Second Motion to Terminate, unless:

> the court [now] makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.[22]

The court will not make written findings based on the record in this case that prospective relief remains necessary to prevent Defendants from engaging in a current and ongoing violation of detainees' federal rights for at least the following two reasons.  First, based on the court's review of the sections of the Salt Lake County Jails Policy Manual applicable to strip searches, which Defendants attached to certain of their memoranda, and based on the court's consideration of Defendants' Supplemental Memorandum, the court is satisfied that Defendants have shown that their strip search policy incorporates in substance the requirements of the Consent Decree and that the Consent Decree, therefore, is no longer necessary to protect detainees' federal rights.

---

[22]18 U.S.C.S. § 3626(b)(3); *see id.* at § 3626(b)(1)(A)(iii), (b)(2).

Second, Plaintiffs, who have the burden to demonstrate ongoing violations,[23] have not shown a current and ongoing violation of a federal right of detainees, and more significantly, have not even alleged any facts which, if true, would amount to a current and ongoing violation. Plaintiffs have not persuaded the court that the appointment of an expert under Rule 706 of the Federal Rules of Evidence is necessary to show a current and ongoing violation or is otherwise appropriate in this case.  Instead, the court is satisfied that Plaintiffs have had the opportunity to discover evidence sufficient to allow them to at least allege facts of a current and ongoing violation, if any such evidence exists, but have failed to do so.

For instance, according to the record, even at the time of Defendants' First Motion to Terminate, Salt Lake County was encouraging Plaintiffs to engage in discovery regarding current and ongoing constitutional violations by Defendants and was cooperating with Plaintiffs' attempts to discover evidence relating to violations of detainees' federal rights.[24]  In particular, Defendants agreed to provide Plaintiffs with the two complaints relating to allegations of illegal strip searches that were filed against Salt Lake County after the Consent Decree was entered and that were ultimately settled in or around April of 1999.[25]  In addition, at Plaintiffs' request, Defendants researched grievances filed within a certain period of time dealing with strip searches "which have reached the exhaustion level" and "provided the results of such research" to

---

[23]*Guajardo v. Texas Department of Criminal Justice*, 363 F.3d 392, 395-96 (5th Cir. 2004) ("We agree with the great majority of courts to address this issue: a plain reading of the PLRA, including its structure, imposes the burden [to demonstrate ongoing violations] on the prisoners."), *cert. denied*, 543 U.S. 818 (2004).

[24](Defs.' Reply to First Mot. to Term. (dkt. no. 127) at 3-4.)

[25](*Id.* at 4.)

Plaintiffs.[26]  Moreover, there is no indication in the record that Plaintiffs were impeded in their attempts to discover evidence of current and ongoing violations, either by Defendants or for any other reason.

Plaintiffs' meager allegations that the existence of two lawsuits against Salt Lake County alleging improper strip searches, which were settled in 1999, as well as certain "ambiguous and/or highly invasive" provisions of the Salt Lake County Jails Policy Manual "suggest" that there are current and ongoing violations of detainees' federal rights are not a sufficient basis upon which the court could make written findings that the prospective relief contained in the Consent Decree remains necessary to prevent Defendants from engaging in a current and ongoing violation of detainees' federal rights.  Because Plaintiffs have not alleged specific facts which, if true, would amount to a current and ongoing constitutional violation, the court, in its discretion, finds that an evidentiary hearing is not necessary in this case and that pursuant to the PLRA, the Consent Decree should now be terminated.[27]  Therefore, IT IS ORDERED that Defendants' Second Motion to Terminate is hereby GRANTED.

---

[26](*Id.*)

[27]*See Guajardo*, 363 F.3d at 397; *Cagle v. Hutto*, 177 F.3d 253, 258 (4th Cir. 1999).  The court also concludes that *Ginest v. Bd. of County Comm'rs of Carbon County*, the case upon which Plaintiffs rely in support of their position that "'the party opposing termination must be given the opportunity to submit additional evidence in an effort to show current and ongoing constitutional violations'" does not prevent the termination of the Consent Decree in this case. *See* Plaintiffs' Opp. to Second Mot. to Term. (dkt. no. 134) at 3.)  The plaintiffs in *Ginest*, unlike Plaintiffs in this case, had "alleged specific facts in their supporting affidavits, which, if true, would amount to current and ongoing constitutional violations."  295 F. Supp. 2d 1274, 1277 (D. Wyo. 2004).

DATED this _11_ day of _Dec._, 2006.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge